**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **United States of America *ex rel*.** ) | |
| **ALFONTAINE COKER,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Case No. 07 C 5988** |
| ) | |
| **JOSEPH MATHY, Warden, Pontiac** ) | |
| **Correctional Center,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2001, following a jury trial in the Circuit Court of Cook County, Illinois, petitioner Alfontaine Coker was convicted of two counts of aggravated kidnapping, one count of aggravated criminal sexual assault, and one count of attempted aggravated criminal sexual assault. The trial court sentenced Coker to twenty-five years for the aggravated criminal sexual assault and ten years for one of the aggravated kidnapping counts, to be served consecutively, as well as concurrent sentences on the other two counts.

Coker has petitioned for a writ of habeas corpus pursuant to 28 U.S.C § 2254. The state moved to dismiss Coker's petition as barred by the statute of limitations. The Court denied the state's motion. *See Coker v. Jones*, No. 07 C 5988, 2008 WL 4372395 (N.D. Ill. Sept. 24, 2008). After the state answered Coker's petition, the Court appointed counsel to represent Coker who, to that point, had represented himself. Up

to that time, and following the appointment of counsel, Coker filed a number of memoranda and letters that were either duplicative of his original petition or unintelligible.  The Court struck the *pro se* filings that Coker made after counsel had been appointed.  Coker's appointed counsel filed a reply brief stating that, after reviewing the state's answer, Coker had nothing further to say and would stand on the arguments raised in his original petition.  The matter is now fully briefed.  For the following reasons, the Court denies Coker's petition.

**Background**

Factual findings by the state court are presumed correct in a federal habeas corpus proceeding unless they are rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2005).  Because Coker has not rebutted the Illinois Appellate Court's factual findings, the Court adopts the following account from the decision of that court in *People v. Coker*, No. 1-01-3821 (Ill. App. Sept. 30, 2003) (unpublished order, attached as Exhibit A to the state's motion to dismiss).

In the early morning hours of February 7, 1998, two minor women, Jonelle J. and Edwina E., were walking outside when a car approached them.  *Id.* at 2.  Two men inside the car began to speak with Jonelle and Edwina and forced them to enter the car at gunpoint.  *Id.*  At trial, Jonelle and Edwina identified Coker as the driver of the car. *Id.* at 2-3.  After Jonelle and Edwina were forced into the car, Coker and his accomplice, Anthony Durant, drove around with them for four to five hours.  *Id.* at 2. Coker eventually parked the car in the driveway of an apparently abandoned house,

and he and Durant took the two women inside.  *Id.*  On the second floor of the house,

Coker forced Jonelle to undress, placed a condom on his penis, and attempted to force

sexual intercourse with Jonelle.  When Coker went to investigate loud noises coming

from an adjoining room where Durant held Edwina, Jonelle, still naked, jumped out of a

window from the second floor to the ground.  *Id.*  She ran to a nearby house where a

resident took her inside and called the police.  *Id.* at 2-3.  Edwina escaped a short time

later and ran to the same house as Jonelle.  *Id.* at 4.

Detective Ernest Bell investigated the attack.  *Id.* at 5.  He interviewed Jonelle

and Edwina at St. Francis hospital, taking down their descriptions of their assailants.  *Id.*

at 5-6.  The police recovered a used condom from a toilet in the upstairs bathroom at

the crime scene.  *Id.* at 6.  That condom contained semen, and DNA testing showed a

match to Coker's DNA.  *Id.* at 7.

On July 22, 1998, Jonelle and Edwina independently identified Durant from a

photo array shown to them by the police.  *Id.* at 3-4.  On October 9, 1998, Jonelle and

Edwina independently identified Durant in a lineup at the police station and also

identified Coker from a second photo array.  *Id.*  Finally, on July 25, 2000, Jonelle

identified Coker in a lineup at a police station.  *Id.* at 3.  At the time of the lineup

identification by Jonelle, Coker wore his hair in braids, though it had been cut straight

on the night of the assaults.  Coker was the tallest individual in the lineup in which

Jonelle identified him and the only individual who wore his hair in braids.

Coker testified at trial.  *Id.* at 6.  He testified that he was not with Jonelle, Edwina,

or Durant on the night in question.  *Id.*  Coker also claimed he was not at the house

where the condom was found on the day Jonelle and Edwina were attacked, though he acknowledged that he had been there previously. *Id.* He testified that he occasionally took dates there to engage in sexual intercourse and had done so in late January or early February 1998. *Id.* Despite his denials, the jury found Coker guilty of two counts of aggravated kidnapping, one count of aggravated criminal sexual assault, and one count of attempted aggravated criminal sexual assault.

On direct appeal to the Illinois Appellate Court, Coker contended he was entitled to reversal of his convictions based on alleged problems with Jonelle's and Edwina's identifications of him, ineffective assistance of counsel, his inability to cross examine Durant, Illinois' one-act one-crime rule, the jury instruction regarding identification evidence, and whether the evidence was sufficient to prove him guilty beyond a reasonable doubt. The appellate court rejected each of these contentions, finding they were either meritless or that Coker had forfeited them. The Illinois Supreme Court denied Coker's petition for leave to appeal.

## Discussion

A district court may grant a writ of habeas corpus only if the state court's adjudication of petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### 1. One-act one-crime rule

Coker contends that his convictions violate Illinois' one-act one-crime rule. That claim is not cognizable in a section 2254 petition, which provides relief only for

4

violations "of the Constitution or laws of treaties of the United States," not state law rules. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *United States ex rel. Mays v. Chandler*, No. 02 C 5167, 2005 WL 1667773, at *8 (N.D. Ill. July 18, 2005) (holding one-act one-crime doctrine not cognizable in a section 2254 action). Accordingly, the Court need not address the merits of Coker's one-act one-crime claim.

**2.      Issues relating to identifications of Coker**

Coker raises a number of issues pertaining to the identification evidence presented trial. First, he contends that Jonelle's identification violated due process because the lineup was improperly suggestive in that he was the tallest individual, the only one with braids, and the other men in the lineup had varying skin complexions. The Illinois Appellate Court identified the correct rule regarding whether an allegedly suggestive lineup violates due process. The case the court cited relied on the precedent of the Supreme Court. *See People v. Simpson*, 172 Ill.2d 117, 140, 665 N.E.2d 1228, 1240 (1996) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).

Nor did the state court misapply the appropriate standard as set forth by the Supreme Court. The Illinois Appellate Court explained that due process is not violated simply because a suspect has differences in appearances from the other participants in the lineup. This is consistent with federal law. *See United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002) (holding lineup was not unduly suggestive where defendant was larger than all of the other participants in a lineup). "Authorities conducting lineups . . . are not required to search for identical twins in age, height, weight, or facial features." *Id.*; *see also United States v. Curry*, 187 F.3d 762, 768-69 (7th Cir. 1999).

Moreover, the Illinois Appellate Court reasonably concluded that the fact that Coker was the only individual in the lineup with braided hair indicates that the lineup was not suggestive. At the time of the attack, Edwina and Jonelle stated that the attacker, subsequently identified as Coker, had short, straight-cut hair. Coker had grown braids between then and the July 2000 lineup.

The Illinois Appellate Court also correctly identified and applied the federal constitutional standard used to determine whether a suggestive lineup is sufficiently reliable to be admissible. *Id.* at 768. "In assessing reliability, the court looks at five factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." *Id.* The state court correctly noted that Jonelle had the opportunity to view Coker at close range for over five hours, she was focused on him throughout that time, she previously identified Coker in a photo array, and there is no evidence that she was uncertain of her identification. Though over two years had passed between the crime and the lineup, the state court reasonably determined that Jonelle's identification of Coker was reliable under the totality of the circumstances.

Coker also challenges the lineup identification by Jonelle by contending that he was shown to Jonelle twice. Nothing in the record supports this contention other than Coker's own testimony that he was subject to two lineups in front of Jonelle. On the other hand, Bell testified that Jonelle only viewed a single lineup with Coker. But even if Coker presented clear and convincing evidence that he had been subject to two lineups

in front of the same witness, that claim would be procedurally defaulted because he failed to raise it before the Illinois Appellate Court.  Before seeking relief in federal court pursuant to section 2254, a petitioner must first present his federal claims fully and fairly to the state courts.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Coker never raised the alleged two lineup issue in his direct appeal.  A federal court "will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Daniels v. Knight*, 476 F.3d 426, 430 (7th Cir. 2007) (citing *Dretke v. Haley*, 541 U.S. 386, 388 (2004)).  Coker could also overcome the procedural default by showing "a sufficient probability that [the court's] failure to review his federal claim will result in a fundamental miscarriage of justice."  *Edward v. Carpenter*, 529 U.S. 446, 451 (2000). Coker, however, has not attempted to establish either of these exceptions to the general rule.

Next, Coker contends that the various identifications performed by Jonelle and Edwina were unreliable and that the state court failed to correctly apply the test on this issue.  The standard for reliability is set forth above.  *See Curry*, 187 F.3d at 768.  In its analysis, the Illinois Appellate Court set forth the correct test for evaluating the reliability of an identification, but failed to explicitly apply the fourth factor, the level of certainty demonstrated by the witness.  *See Coker*, slip op. at 7-9.  The court's failure to explicitly mention the fourth factor does not suggest that it unreasonably applied federal law. Coker has failed to identify any evidence in the record attacking the certainty of the five separate occasions on which Edwina or Jonelle identified him as their attacker (two photo arrays, one lineup, and twice during trial testimony).  Additionally, even if such

evidence existed, the other factors strongly support the reliability of the identification evidence and testimony. Under the totality of the circumstances, admitting this evidence was not an unreasonable application of federal law.

Next, Coker contends that the state court erred by failing to clarify the "uncertainty of photo identification outside the presence of the jury." Pet. for Writ of Habeas Corpus at 5. That "uncertainty" stems from some confusion on the part of Edwina regarding the date on which she identified Coker in a photo array (she confused whether she first identified Durant or Coker in July 1998). The record demonstrates that Coker's trial counsel objected when the prosecutor attempted to correct Edwina's confusion. Coker, however, has not identified any federal law, as determined by the Supreme Court, that would support his contention that the state trial judge was required to deal with this issue.

Coker raises one additional issue related to the identification evidence. He contends that the jury instruction on this issue misstated the law and violated due process. That instruction correctly listed the five factors for evaluating the reliability of an identification, but it contained the word "or" between each factor. The Illinois Appellate Court concluded that this error was harmless based on the overwhelming evidence supporting the reliability of the identifications. *See Coker*, slip op. at 18.

To provide a ground for relief under section 2254, an error in an instruction must "must so infect[] the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (internal quotation marks omitted). That is not the case here. Though the trial court put the word "or" between each factor, it prefaced the instruction by informing the jury that "[w]hen you weigh the identification testimony of a witness,

8

you should consider all the facts and circumstances in evidence, including but not limited to, the following . . . ." *Coker*, slip op. at 15. Thus the jury was instructed to consider "all facts and circumstances," including each of the factors. The Supreme Court warns that instructions should "not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (internal quotation marks omitted). The context of both the entirety of this instruction and the trial as a whole demonstrate that the state appellate court did not unreasonably determine that Coker's due process rights were not violated.

**3.    Ineffective assistance of counsel**

Coker contends that he was denied effective assistance of counsel because his trial lawyer did not file a motion suppress any of the identification evidence. The Illinois Appellate Court applied the correct standard for evaluating whether Coker received effective assistance of counsel. *Coker*, slip op. at 12-13 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). As detailed above, the identification evidence was properly admitted at trial. Accordingly, it was not ineffective assistance of counsel not to move to suppress that evidence, because such a challenge would have failed. *See Daniels v. Knight*, 476 F.3d 426, 434-35 (7th Cir. 2007); *Badelle v. Correll*, 452 F.3d 648, 664 (7th Cir. 2006).

**4.    Sufficiency of the evidence**

Coker contends that the evidence presented at trial was insufficient to prove him guilty beyond a reasonable doubt. On a habeas corpus petition, a court considers "whether, after reviewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Illinois Appellate Court correctly stated and applied this rule. *Coker*, slip op. at 7-11. In light of the testimony of Edwina and Jonelle and the discovery of a condom containing Coker's DNA at the crime scene, a rational juror could have concluded that the prosecution had proven Coker guilty beyond a reasonable doubt.

5.      **Right to confront witnesses**

Last, Coker contends his rights were violated because the police investigated him after obtaining his name from Durant, but Coker did not have the opportunity to confront Durant at trial. The Illinois Appellate Court found that Coker had forfeited this argument under Illinois law by failing to raise it in his post-trial motion. *Coker*, slip op. at 11. A claim is procedurally defaulted if a state court has found that the petitioner failed to raise it as required by state law. *Gomez v. Jaimet*, 350 F.3d 673, 677 (7th Cir. 2003). Again, Coker has not attempted to argue that any of the exceptions to this rule apply. Thus this claim is barred.

**Conclusion**

For the reasons stated above, the Court denies Coker's petition for a writ of habeas corpus. The Clerk is directed to enter judgment in favor of the respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 6, 2009